## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------
                                          )
THE PROTECT DEMOCRACY PROJECT, INC.,      )
2020 Pennsylvania Avenue, NW, #163,       )
Washington, DC 20006                      )
                                          )    COMPLAINT
                        Plaintiff,        )
        v.                                )    Civil Action No. 19-2990
                                          )
U.S. DEPARTMENT OF JUSTICE,               )
950 Pennsylvania Avenue, NW,              )
Washington, DC 20530,                     )
                and                       )
U.S. DEPARTMENT OF HOMELAND               )
SECURITY,                                 )
245 Murray Drive, SW,                     )
Washington, DC 20528                      )
                                          )
                        Defendants.       )
-----------------------------------------------------------
```

1.      Both the U.S. Department of Homeland Security ("DHS") and the Federal Bureau of Investigation ("FBI") maintain programs aimed at discovering the online activity of foreign actors seeking to interfere in U.S. elections by stirring up tensions around divisive political issues.

2.      Protecting the integrity of U.S. elections is crucial to maintaining our democracy. Law enforcement and national security agencies must balance that imperative with an equally essential one: assuring the American public that the government is neither surveilling nor seeking to suppress Americans' political speech.  However, there is no information in the public domain about how the DHS and FBI efforts protect the political speech of Americans.

3.      The need for public information about how DHS and FBI balance those vital goals is especially pronounced precisely because doing so may be difficult. Foreign influence

efforts frequently aim to further polarize the American electorate on issues about which Americans already have strong feelings—for example, by creating or amplifying content supporting both the Black Lives Matter movement and its opposition. Legitimate law enforcement and national security objectives counsel in favor of strenuous efforts to detect and disable foreign interference in our elections; fundamental free speech principles require doing so in a way that does not stifle legitimate debate among U.S. persons, even (and especially) on the most provocative topics.

4.      Nor is the potential impact of these programs limited to the online arena. Because DHS and FBI create intelligence products that are distributed to state, local, and tribal law enforcement agencies around the country, statements from the agencies that particular political speech is or may be a manifestation of foreign interference rather than protected expression may influence the literal policing of speech.

5.      On August 14, 2019, Plaintiff submitted requests to the FBI and to a number of offices within DHS under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain relevant records.  Both DOJ and DHS have failed to respond to Plaintiff's requests within the statutory deadlines.

6.      The requested records concern federal government's surveillance of social media to monitor political speech, potentially including speech by U.S. persons.  In light of the 70 percent of Americans who use social media, the need for transparency in this area is of the highest magnitude.[1]

---

[1] Pew Research Center, *Social Media Fact Sheet*, https://www.pewinternet.org/fact-sheet/social-media/ (last visited Aug. 14, 2019).

7.      At the core of speech protected by the First Amendment is "unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Meyer v. Grant*, 486 U.S. 414, 421 (1988) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). The public has a right to know if and how DHS and the FBI are protecting that vital interchange as the agencies work to prevent foreign interference in U.S. elections.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

10.     Defendants have failed to meet the statutory deadlines set by FOIA.  *See* 5 U.S.C. § 552(a)(6)(A); (a)(6)©(ii)(I).  Plaintiffs have therefore exhausted all administrative remedies, pursuant to 5 U.S.C. § 552(a)(6)(C).

## PARTIES

1.      Plaintiff Protect Democracy is an organization with 501©(3) tax-exempt status, incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.  Plaintiff's mission is to protect our democracy from descending into a more autocratic form of government by preventing those in power from depriving Americans of a free, fair, and fully-informed opportunity to exercise ultimate sovereignty.  As part of this mission, Plaintiff seeks to inform public understanding of operations and activities of the government by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities. Plaintiff regularly requests such information pursuant to FOIA.  Plaintiff intends to give the public access to documents transmitted via FOIA on its website, www.protectdemocracy.org,

and to provide information about and analysis of those documents as appropriate.

11.     As part of this mission, Plaintiff seeks to inform public understanding of government operations and activities by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities. Plaintiff regularly requests such information pursuant to FOIA.  Plaintiff intends to give the public access to documents obtained via FOIA by publishing them on its website, www.protectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

12.     Defendant U.S. Department of Justice is an agency of the executive branch of the federal government of the United States within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551.  Defendant is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530.  Defendant has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

13.     Defendant U.S. Department of Homeland Security is an agency of the executive branch of the federal government of the United States.  Defendant is headquartered at 245 Murray Drive, SW, Washington, DC 20528.  Defendant has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

## FACTS

### *FBI and DHS Efforts to Identify Foreign Influence Online*

14.     In the fall of 2017, FBI Director Christopher Wray established the Foreign Influence Task Force (FITF) within the FBI "to identify and counteract malign foreign influence

operations targeting the United States."  FBI National Press Office, *The FBI Launches a Combating Foreign Influence Webpage* (Aug. 30, 2018).[2]

15.     FITF engages in investigations, information and intelligence sharing, and private sector partnerships.[3]

16.     On July 23, 2019, Director Wray testified before the Senate Judiciary Committee both that foreign influence operations "continue to use false personas and fabricated stories on social media platforms to discredit U.S. individuals and institutions" and that the FITF remains "focused on information and intelligence-sharing" in this space.  Oversight of the Federal Bureau of Investigation, Hearing Before the Committee on the Judiciary, 116th Cong. § 1 (Jul. 23, 2019) (Statement of Christopher Wray).[4]

17.     In all of its programs, activities, and investigations, FBI engages in social media surveillance, and employees in each division and field office engage in social media surveillance. *See* Pls.' Opp. To Def.'s Mot. For Partial Summ J. 2-4, *ACLU v. DOJ* (N.D. Cal. No. 19-CV-00290-EMC, filed Sept. 20. 2019) and attachments thereto.[5]

18.     DHS also created a Countering Foreign Influence Task Force (CITF) in the run-up to the 2018 midterm election. Erin Banco and Betsy Woodruff, *Trump's DHS Guts Task Forces Protecting Elections from Foreign Meddling*, The Daily Beast (Feb. 14, 2019).[6]

---

[2] https://www.fbi.gov/news/pressrel/press-releases/the-fbi-launches-a-combating-foreign-influence-webpage.

[3] Federal Bureau of Investigation, *Combating Foreign Influence*, https://www.fbi.gov/investigate/counterintelligence/foreign-influence (last visited Sept. 25, 2019).

[4] https://www.judiciary.senate.gov/imo/media/doc/Wray%20Testimony1.pdf.

[5] https://www.aclu.org/sites/default/files/field_document/33._plaintiffs_opposition_to_defendants_motion_for_partial_summary_judgment.pdf.

[6] https://www.thedailybeast.com/trumps-dhs-guts-task-forces-protecting-elections-from-foreign-meddling.

19.     DHS, and CITF, attempt to coordinate information-sharing between state and local governments, federal departments and agencies, and private sector companies—including social media companies. Elizabeth Bodine-Baron et al., *Countering Russian Social Media Influence* 14, Rand Corporation (2018).[7]

20.     In February 2019, DHS Cybersecurity and Infrastructure Security Agency Director Christopher Krebs told media that these efforts would continue through the 2020 election cycle. Frank Konkel, *DHS 'Doubling Down' on Election Security Heading Into 2020*, Nextgov (Feb. 14, 2019).[8]

21.     The Countering Foreign Influence (CFI) Subcommittee of the Homeland Security Advisory Council within DHS defines a category of "False Information Operations" as the deliberate use of "false narrative through traditional media and social media outlets to manipulate and mislead the population and the weaponization of information to undermine organizations, democratic processes, or to polarize divisions."[9]

22.     The subcommittee's interim report recently found that "during and between elections, foreign actors have been active on social media spreading inaccurate information"[10] and recommends that DHS "identify and establish departmental intelligence and analysis requirements" on these issues.[11]

---

[7] https://www.rand.org/content/dam/rand/pubs/research_reports/RR2700/RR2740/RAND_RR2740.pdf.

[8] https://www.nextgov.com/cybersecurity/2019/02/dhs-doubling-down-election-security-heading-2020/154904/.

[9] Homeland Security Advisory Council, *Interim Report to the Countering Foreign Influence Subcommittee* (May 21, 2019), at 13, available at https://www.dhs.gov/sites/default/files/publications/ope/hsac/19_0521_final-interim-report-of-countering-foreign-influence-subcommittee.pdf.

[10] *Id.* at 28.

[11] *Id.* at 29.

23.     The activities of both agencies thus include monitoring social media and other open source information to find evidence of foreign influence and foreign interference in U.S. elections.

***Plaintiff's FOIA Request***

24.     On August 14, 2019, Plaintiff electronically submitted identical FOIA requests to a total of six components within the two Defendant agencies. The request ("Plaintiff's Request") sought "the following records concerning efforts to counter or combat foreign influence campaigns by Russia, North Korea, or China or any other nation online:

> (a) All records generated as a result of such efforts and shared with any state, local, tribal, or territorial government; any foreign government; or any U.S. technology company;
>
> (b) All records discussing the segregation of information concerning U.S. persons analyzed during the course of such efforts;
>
> © All policies, guidance, procedures, directives, advisories, memoranda, and/or legal opinions pertaining to the agency's justification for such efforts or guiding their operation;
>
> (d) All records discussing rules or guidelines for compliance with 28 CFR Part 23;
>
> © All intelligence assessments generated as a result of such efforts;
>
> (f) All unclassified intelligence products generated as a result of such efforts; and
>
> (g) Records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted

searches, we also request any such records prepared in connection with the processing of this request.

25.     A true and correct copy of Plaintiff's Request is attached as Exhibit A.

26.     Plaintiff requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)© and 28 C.F.R. § 16.5©. Ex. A at 3-4.

27.     Plaintiff qualified for expedited processing based on the "urgency to inform the public about an actual or alleged federal government activity" and because the request is "made by a person who is primarily engaged in disseminating information."  5 U.S.C. § 552(a)(6)€.

28.     Plaintiff sought fee waivers pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Ex. A at 5.

29.     Plaintiff qualified for the fee waivers based on its status as a representative of the news media and because disclosure of the information "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(ii)-(iii).

30.     Plaintiff submitted its Request to four offices at DHS: the Office of Intelligence and Analysis ("DHS I&A"), the Office of Civil Rights and Civil Liberties ("DHS CRCL"), the Cybersecurity and Information Security Agency ("DHS CISA"), and the DHS Headquarters Chief FOIA Officer ("DHS HQ").

31.     Plaintiff submitted its Request to two offices at DOJ: the FBI, and the Department of Justice's Mail Referral Unit ("DOJ MRU").

***DHS Responses to Plaintiffs' Request***

32.     DHS I&A acknowledged in a letter dated August 16, 2019 that it had received Plaintiff's Request on August 15, 2019.  It granted Plaintiff's requests for expedited processing and for a fee waiver.

33.     DHS I&A invoked the ten-day extension to process the request "[c]onsistent with 6 C.F.R. Part 5 § 5.5(a)." It labeled Plaintiff's Request, "2019-IAFO-00228."

34.     DHS I&A has not provided Plaintiff with a final response to Plaintiff's Request.

35.     DHS CRCL did not acknowledge Plaintiff's Request, which was submitted via e-mail on August 14, 2019. Plaintiff followed up by telephone and by email, but never secured any acknowledgment of the request.

36.     DHS CRCL has not provided Plaintiff with a final response to Plaintiff's Request.

37.     DHS CISA acknowledged in an email dated August 20, 2019 that it had received Plaintiff's Request on August 15, 2019.   It granted Plaintiff's fee waiver request, but denied the request for expedited processing.  DHS CISA invoked a ten-day extension of processing time "as allowed by 6 C.F.R. Part 5 § 5.5©."  It labeled Plaintiff's Request, "2019-NPFO-00307."

38.     DHS CISA has not provided Plaintiff with a final response to Plaintiff's Request.

39.     DHS HQ acknowledged in a letter August 16, 2019 that it had received Plaintiff's Request on August 15, 2019. DHS HQ granted Plaintiff's request for a fee waiver and denied the request for expedited processing. It labeled Plaintiff's Request, "2019-HQFO-01141."

40.     The acknowledgment letter stated that DHS HQ had "determined that [Plaintiff's] request is too broad in scope or did not specifically identify the records which [Plaintiff is] seeking." Among other things, it stated that "[w]henever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the DHS component or office you believe created and/or controls the record." The letter asked that Plaintiff resubmit the request with a "reasonable description of the records you are seeking."

41.     The letter also stated that it was not a denial of Plaintiff's Request and that "[u]pon receipt of a perfected request, you will be advised to the status of your request."

42.     On August 27, 2019, Plaintiff followed up with a telephone call to learn more about why DHS HQ viewed the request as too broad to process.

43.     On September 5, 2019, as requested on that call, Plaintiff provided DHS HQ via email with a list of specific offices to search within DHS HQ.

44.     On September 13, 2019, DHS HQ responded via email indicating that it still considered the request insufficiently detailed.  DHS requested that Plaintiff provide "a specific subject matter or search terms/phrases" and asked whether there are "any person(s) in particular that we could search."

45.     On September 18, 2019, Plaintiff once again responded by email, reiterating that the specific subject matter, including relevant terms to search, had been provided in the original request.  Plaintiff asked that a search for responsive records begin immediately.

46.     On September 24, 2018, DHS HQ responded via email to once again ask which offices Plaintiff would like to search. DHS HQ also sought "additional details to filter [its] search."

47.     Plaintiff responded that same day with a telephone call. DHS HQ asked on that phone call that Plaintiff (a) agree to a search of only political appointees, or provide a list of specific employees to search; (b) provide a list of offices within the Privacy Office to search; and (c) provide a full list of conjunctive search terms, e.g. "foreign agent" & "Russia."

48.     On September 26, 2019, Plaintiff followed up with an email stating that Plaintiff did not agree to a search of political appointees only and asking that the entire Privacy Office be searched. Plaintiff also inquired whether DHS HQ had attempted to test any combinations of

search terms or inquired of the relevant employees at DHS which search terms might be appropriate.

49.     On October 2, 2019, DHS HQ responded via email, stating, among other things, that it "continue[d] to affirm that [Plaintiff's] request does not include sufficient detail to us [sic] to locate them with a reasonable amount of effort at this time."  It also stated that Plaintiff is "are far better suited to craft terms that would apply to records you are interested in."

50.     FOIA allows the agency to "make *one request* to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester." 5 U.S.C. § 552(a)(6)(A)(ii)(I) (emphasis added).

51.     DHS HQ has not provided Plaintiff with a final response to Plaintiff's Request.

***DOJ Responses to Plaintiff's Request***

52.     The FBI acknowledged Plaintiff's Request with a letter dated August 23, 2019. The letter was delivered via email on August 26, 2019.  The FBI granted Plaintiff's fee waiver request, but denied its request for expedited processing.  It labeled Plaintiff's Request, "1445099-000."

53.     The FBI has not provided Plaintiff with a final response to Plaintiff's Request.

54.     DOJ MRU acknowledged Plaintiff's Request with a letter dated August 19, 2019. DOJ MRU referred the Request to FBI.

55.     Defendants have no lawful basis for declining to timely produce responsive records requested by Plaintiff.

## CLAIM FOR RELIEF

### Violation of FOIA, 5 U.S.C. § 552

56.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

57.     Defendants are subject to FOIA and must therefore release in response to FOIA requests any disclosable records in their possession at the time of the requests and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

58.     Defendants have failed to comply with the statutory time for the processing of FOIA requests.

59.     Plaintiff has exhausted all applicable administrative remedies with respect to Defendants' failure to timely comply with Plaintiff's Requests.

60.     Defendants have no lawful basis for declining to expeditiously produce the records requested by Plaintiff under FOIA.

61.     Accordingly, Plaintiff is entitled to an order compelling Defendants to release, as soon as practicable, any responsive documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(1) Order Defendants, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's Request;

(2) Order Defendants, by a date certain, to demonstrate that each has conducted an adequate search;

(3) Order Defendants, by a date certain, to produce to Plaintiff any and all non-exempt records or portions of records responsive to Plaintiff's Request, as well as *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(4) Enjoin Defendants from improperly withholding records responsive to Plaintiff's

Request;

(5) Order Defendants to grant Plaintiff's request for a fee waiver;

(6) Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant

to 5 U.S.C. § 552(a)(4)(E);

(7) Grant Plaintiff such other relief as the Court deems just and proper.

Dated: October 4, 2019

By:    /s/ Laurence M. Schwartztol
       Laurence M. Schwartztol
       (D.D.C. Bar No. MA0007)
       THE PROTECT DEMOCRACY PROJECT, INC.
       15 Main Street, Ste 312
       Watertown, MA 02472
       (202) 945-2092
       larry.schwartztol@protectdemocracy.org

       Rachel E. Goodman
       (*pro hac vice* application forthcoming)
       THE PROTECT DEMOCRACY PROJECT, INC.
       115 Broadway, 5th Fl.
       New York, NY 10006
       (202) 997-0599
       rachel.goodman@protectdemocracy.org
       *Counsel for Plaintiff* †

† Clinic student Xiaoyi Xu, Harvard Law School Class of 2021, helped prepare parts of the complaint.